Thank you, Judge. Today's cases will be called as previously announced. The times will be as allotted to counsel. The first case today is No. 19-2098, United States v. Oscar J. Martinez-Hernandez. Attorney Castro Lang, please introduce yourself on the record to begin. Good morning, Your Honors. Attorney Rafael Castro Lang, representing appellant Oscar Martinez-Hernandez. I know we've had a little bit of trouble picking up on the mic in the past. Are we getting everything we need? I think so. Okay. Go ahead. Sorry about that. I represent appellant Oscar Martinez-Hernandez. Your Honor, out of my ten minutes, I would like to reserve two minutes for rebuttal. You may. Okay. Now, it's patently clear, Your Honor, that a conviction obtained by perjured testimony cannot stand. Here, the alleged motive for Martinez-Hernandez killing Alvarate on February 26, 2013, is because four government witnesses, two cooperating witnesses, and two officers, testified that on February 26, Alvarate and Lieutenant Correa had gone to search Martinez and Api's cell phone and had found multiple contraband items, drugs, marijuana, and $1,000 worth of commonsense. That incident, which they related as having seen, is what allegedly drove Api and Martinez to say he's going down today. Now, there are serious problems with that testimony because the logbook, the to-be-shakedown logbook that went missing for three years, that was specifically used by the institution to have a record of interventions by officers with inmates and, if anything, was discovered to have it recorded in the logbook. You have the logbook in the appendix, so it's clear that the purpose of the logbook is, in fact, to maintain a clear, reliable record. Well... If I might interrupt you, as I understand it, there's the logbook, and then there's also something called the TrueView system. I'm glad you brought that up because, unfortunately, this is a case that reflects that not only inmates were untruthful, but that officers also provided untrue statements. Can I ask you this, though, about the TrueView system? Yes. Did you ask for that to be produced in discovery? I was not trial counsel, Your Honor, but I submit for the court to consider that if the TrueView system... Just answer Judge Montecalvo's question. Did trial counsel ask for it? That I'm aware of, the trial counsel did not request a TrueView. It should have been requested, but I go beyond that because if that was true, that they would put that down in the TrueView system, they would have presented, the government would have presented, the true system records to establish that that had been placed there. That would have been an important piece of evidence, independent, reliable evidence, that the event did actually take place. I guess, don't you think if we're trying to think about the materiality of the logbook, that not requesting the information in the TrueView system suggests that the way you're characterizing the logbook is very important to the case may not actually be so important, right? Well, Your Honor... Because the TrueView would have recorded any searches by the lieutenant. I think it would be error for the court to assume that Rosa's testimony was truthful when they didn't bring the TrueView system and that the logbook, which was hidden for three years, that demonstrated that no search had occurred on January 26, 2013, what was kept hidden at MDC for three years, and at the last moment, was given to Martinez and Endes after he was convicted. Do I have it right, though, that initially trial counsel, once it was finally produced, and I agree it took a very, very long time to find that and to produce it, once it was finally clear that the government did have it, trial counsel said, well, I don't want to look at it right now? Well, Your Honor, this is the problem. At the last minute, the judge was provided the book by the federal prosecutors. The judge announced it during instructions that had already been given. What was pending was the closing arguments. The spoliation instruction, Your Honor, to begin with, could not have been legally provided to the jury as it was, because juries cannot be instructed based on a lie. The spoliation instruction says that a book, that book has not been found, and so you may infer that it could have had something favorable for the defendant. I submit that there's many problems with that way of proceeding that unfortunately involved the judge, because judges and lawyers take an oath to follow the law when they swear. And to say that in a criminal proceeding such as this where the defendant is facing life and could have faced a death penalty, the judge and the defense counsel and the prosecutor can all agree, oh, let's give a spoliation instruction that although we know the book is here, we want to get rid of this case. We want to get rid of this case. Judge Lepez, do you have any questions? Yes, Your Honor. Just very quickly, counsel, as I understand it, Judge Montecalvo indicated defense counsel was given an opportunity by the judge to look at the logbook and to use it if counsel wanted to. The logbook apparently does indicate, at least the logbook does not reflect that there was a shakedown of Martinez on the critical day. And that could have been used to impeach the four witnesses who testified that such a shakedown did take place. The government says, well, there's an explanation for that. The shakedown would not necessarily reflect the logbook would not necessarily reflect the shakedown that was done that day. The point is that by foregoing the opportunity to use that logbook in a fairly simple way, it seems to me you have deprived the government as well of an opportunity to explain why it does not have the significance that you're saying. And so to sort of pitch your request for a new trial on – sure, it's very troubling that it arrives so late, but to pitch a request for a new trial on that sequence of events is very troubling to me because there was an opportunity to provide the full story about the significance of that, and a decision of counsel precluded that from happening. Well, Your Honor, if I may, there is a big difference here because apparently if you read the whole transcript, you'll see that the judge, when they were making the agreement, said you're not waiving anything. You're not waiving a new trial, any objections that you have. Let's finish this case, and then when you have the time, we can reopen and grant you a new trial if I can. So these people were trying to get the case over with, and the defendant's constitutional rights to a fair trial in due process was violated. They cut corners, but at the same time, the judge tried to protect Martinez's rights, saying you're not waiving anything, and that comes when they – at the end. So it takes over the argument that somehow a waiver should operate in this case when defense counsel was being given the assurance by the judge that he wasn't waiving anything. Any further questions? No, thank you. Thank you. My time is up. I had a lot more, but – You have two minutes to rebuttal. Okay. Thank you, counsel. At this time, if Attorney Bornstein would please introduce himself on the record to begin. Good morning, Chief Judge Barron, and may it please the Court, David Bornstein on behalf of the United States. The defendant stands convicted of six offenses stemming from his instrumental role in the murder of Lieutenant Osvaldo Alvarade, a BOP correctional officer who, at the time of his death, was a special investigative services officer at MDC Guaynabo here in Puerto Rico. After a two-week trial, the jury convicted him of every count in the indictment. They did so based upon legally sufficient evidence, and the defendant has failed to identify any reversible error that infects his judgment of conviction. Accordingly, this Court could infirm. We have a lot of ground to cover, so unless any member of the panel would like me to begin elsewhere, I'll turn directly to the Brady suppression claim. First of all, we believe that the defendant has waived this claim for multiple reasons. First of all, he styles it in his opening brief based upon a false factual recitation. He styles it as a Brady suppression claim. He claims on page 10 of his opening brief that, before the beginning of closing arguments, the shakedown logbook was provided to the court. Judge hoped he decided to withhold the logbook from the defense, and after the case was submitted to the jury, Judge hoped he informed the defense that the logbook had been produced to him. And then later, on page 19, the defendant asserts, these are his statement of facts, the judge failed to recess the trial and turn over the logbook to the defense so that the case could be reopened. A copy was not provided to the defense until after the trial ended. In proceeding in this manner, the court became a knowing participant in its suppression. Excuse me, counsel. Okay, so it's late disclosure, not suppression. Why don't you argue it on that premise? Absolutely. So it is a belated disclosure, and the defendant has waived any claim of belated disclosure because, as was discussed during my friend's argument, the defendant refused to look at the logbook once it was produced at a time where he could have reopened his case and presented that additional evidence. In particular, if you look at page 1854 of the appendix, this is when Judge Hope informs the defendant before closing arguments that the logbook has been produced. And he says, let me hear from you first, being the defendant. And the defendant responds, so we stand by the compromise to issue to the jury an instruction precisely explaining to them that we had requested the log and the log was missing. The court then asks defense counsel, are you ready to proceed with your closings? Defense counsel says, absolutely. And indeed, later, to make it perfectly clear, on page 1856, defense counsel says, we're not going to look at the log now, Your Honor. I think the time for that is long past, and we'd like to do our closings and submit this to the jury. Why isn't that? I mean, I understand how there could be a plain error, but why isn't that consistent with a forfeiture rather than a waiver? Which is that at that time, he says, I'm not going to look at it now. The time for that is long past. But if I have a late disclosure claim, he should have brought it maybe in the Rule 33 motion at the end of trial, but didn't. But that wouldn't be waiver. That would just be forfeiture. So then we'd be on plain error. Well, we believe it's waiver, Your Honor, since usually if a defendant is going to claim that the belated disclosure of evidence precluded them from using it, they need to, A, first of all, ask for a continuance. If they don't ask for a continuance, they may not later complain that they didn't have sufficient time and there was no continuance requested. But, B, the reason. But if that's your position, then you could never forfeit. No. Because you don't ask for its weight. It's a forfeiture if you don't ask for a continuance. Well, forfeiture is plain error, not waiver. Yes, but the defendant went one further by refusing to look at the evidence. Now. He said now. The time for that is long past. Isn't that consistent with a late disclosure contention? Which is I can't then develop it. He gave it to me now. What can I do with it now? But if I want to make an argument that because I got it so late, I can make an argument that I could have developed my case in a different way if I had had it, that would be the argument. Now, that should have been raised in Rule 33 to preserve it. It wasn't. Wouldn't that then put us on plain error? There was a Rule 33 motion. It was included in that? There was a Rule 33 motion. So if we're going to split hairs, I'd put it this way, Your Honor. What do you mean split hairs? Split hairs in this manner. So if the defendant, as he is on appeal, as Judge Lopez pointed out, if he's going to claim that the reason he would have used the logbook was to see whether or not it had recorded a February 26, 2013, shakedown of his cell and also Ramos' cell, he could have found that out very quickly. You can turn to page 2233 of the appendix, and that is the date. It's a chronological log. You just have to open it up to that date. And it shows that there was a shakedown of the defendant's cell, cell 227. However, it lists the searched inmate as Delgado, and it records only trash having been recovered. But the point is, if the defendant had wanted to use the logbook for that purpose, he's fully able to do so. It would have been a very quick thing, but he was presented with a choice. And the choice was, does he look at the logbook and risk losing the spoliation instruction? That was the compromise he wanted to stick to. Or, and the spoliation instruction allowed him to argue to the jury a whole host of things they could infer had the logbook been there, or was he going to actually look at the logbook and then be precluded from making those arguments because they would have been belied by the record. And so that is why we're arguing waiver for the specific argument that the defendant is raising here. I suppose if the defendant were raising another argument that would have required days or weeks of analysis of the logbook, that may not have been waived. No, but the idea of a late disclosure is not just that it takes me a long time to read what's disclosed. It may take a long time to make full use of what's disclosed. So if I find out that the story doesn't add up, then there's other witnesses I could pursue and there's a whole case I could make to try and prove it didn't happen the way they said it did. But you can't do that right on the spot looking at the logbook. Well, I believe, once again, he had asked to reopen his case only the day before. He could have fully used the logbook for the purpose he wanted. But if I may, Your Honor, the logbook is simply not grading material. That's shown because, as my friend said, he believes that the government's case showed that the reason why Lieutenant Alvarado was killed on February 26, 2013, was because of the February 26, 2013, shakedown of the defendant's cell and Ramos's cell. That's simply not true. If you look at page 1346 of the appendix, the driver of the car carrying the killer said that the day before he had practiced the route with one of the killers so that they knew what they were going to do on the following day, February 26. There was simply no causal relationship between the February 26 shakedowns and Lieutenant Alvarado's murder later that day. The only witness who thought it was significant was inmate Christopher Gil Rodriguez, who said he was Ramos's cellmate, who said that after the shakedown occurred, Ramos was livid and stormed off to the defendant's cell. And he speculated that that was when they must have decided that Lieutenant Alvarado was going to die that day. But little did he know that the wheels of the death plot or murder plot had already been turning and that probably at that moment the killers were waiting outside in their car because they had instructed to get there hours before the end of Lieutenant Alvarado's shift. So it's simply not grading material whatsoever. So how many witnesses are there fingering the defendant? I thought it was four. Is that right? So it's four witnesses who talked about the February 26th. And so three of them have an account of what precipitated it, and they're all cooperating witnesses. And there's a fourth who has a different account who's his cellmate. I'd like to clear up those facts. No. Only one witness thought that the February 26th shakedown was significant. Right. However, what precipitated Lieutenant Alvarado's murder was several things. First of all, Lieutenant Alvarado was someone once the defendant entered Unit 2B. There's testimony that Lieutenant Alvarado would frequently enter the unit, whereas he didn't earlier, and would frequently search the defendant's cell looking for contraband. But second of all, I would direct the Court's attention to the New Year's Eve party that the defendant held in the unit in 2013, only two months before Lieutenant Alvarado's death. The evidence shows that the inmates were taking opioids, smoking synthetic marijuana, playing loud music, speaking openly on the cell phones, with no correctional officer around. Two witnesses, Hugh Rodriguez and then Luis Rosario, testified that the only correctional officer who stepped up and shut that party down was Lieutenant Alvarado. And I believe that is a significant turning point because – I guess I was just making – Yes, Your Honor. The question is just focused on – these are all points about the sufficiency of the evidence, which I don't – Well, actually – But the question is whether they're overwhelming enough to render non-prejudicial if there was a Brady problem with respect to – that would affect the testimony of the one witness who has the different account. Judge Lopez, do you have any further questions? Yeah. Counsel, Judge Helpe reassured defense counsel that even with the choice that counsel was making to go forward with the spoliation instruction, I think he explicitly said, there's no waiver here, there's no waiver here, there's no waiver here, cognizant of some of the unusual circumstances. But how are we supposed to factor Judge Helpe's reassurance to defense counsel that nothing is being weighed by the choice you're making in assessing your argument that there is, in fact, a waiver here because of what they did? Yes, Your Honor. First of all, whether or not the defendants have preserved this claim of error depends upon this court's case law about waiver and forfeiture, not the district judges' say-so. Second, it's clear that that statement by Judge Helpe did not actually influence the defendant in what he wanted to do. Ever since it became clear that there was a possibility that he could look at that log, he said, for example, no, no, no way, no way, when the government argued that he should look at the log before the jury retired to deliberate. And, again, that assurance occurred after the defendant was asked what he wanted to do and he said he wanted to proceed with his closings. And, Chief Judge Barron, if I could try to answer your question again, it is clear that whether or not the February 26th shakedown occurred was irrelevant to the defendant's guilt. Again, the driver of the car said that he had already done the test drive the day before. But if I could also point out, this is important, on page 44 of the defendant's reply brief, he reveals for the first time that he had for years a 302 form recording an interview by Lieutenant Correa, who is the other officer whom the two inmates identified as being the ones that, it was the defendant and Lieutenant Correa who did the shakedowns on February 26th. And in that 302, Lieutenant Correa says his memory was that the shakedowns had occurred maybe two weeks earlier. And the defendant said he had had that for years. Now, if it were important to the defendant to get that out, that's actually much more probative than a shakedown log, which the testimony shows the shakedown wouldn't have been recorded in since it was an SIS shakedown, not a unit shakedown. But he never used that 302 to either impeach any of the witnesses or, more importantly, try to call Lieutenant Correa. And when he got that spoliation instruction, which allowed him to argue to the jury that they could infer all sorts of things about the missing log, he never asked them to infer that the shakedown didn't occur. That simply wasn't a part of his defense at trial. It's simply a post hoc rationalization to try to make the missing log book seem important. Thank you. Thank you, Your Honor. Thank you, counsel, at this time. Counsel for the appellant would please reintroduce himself on the record. He has a two-minute rebuttal. First of all, Your Honor, I do not – I reject the government's recitation of the record. I think the record demonstrates clearly that there was a back and forth, and it was when the judge assured the defense counsel that he wasn't waiving anything that he didn't send, but let's go ahead. And look what's interesting in this. The government is trying to blame Martinez and Andes for their misconduct. They're the ones that hid the book at NBC for three years. They're the ones, interestingly, the log book that clearly had impeachment value was hidden. Lieutenant Correa, I'm glad he mentioned Lieutenant Correa, SIS officer, he had been subpoenaed to testify at the trial by the government, and they didn't have him subpoenaed. Why? Because they knew that Correa was not going to verify the lies the four witnesses provided to the jury that that search was what led Martinez to kill Albarrate that day. Two items of one witness, as you said, the important witness, one important book, that would contradict the jury. Isn't it strange that both of them were missing? How do you just – on the prejudice point, how does this foliation instruction that was given factor into that? Because what we're weighing is a bunch of testimony that provides a separate ground for thinking that there was a motive for the murder independent of the shakedown. One witness who seems to focus on the shakedown, which you say the log book would help disprove, right? All four witnesses spoke about the shakedown, all four of them, not one. Just very briefly, what is the relevance of this foliation instruction in thinking about the prejudice? Well, the foliation instruction was totally improper, illegal. How is it possible, Your Honor? You're a judge, and you have a jury. You're going to tell that jury that a book was not found, and therefore you may infer that were favorable matters there. When you have the book with you, okay, you're supposed to tell the truth to the jury. The jury's supposed to be guided by the instructions of the judge. That's a total aberration of the criminal justice system. Can three lawyers in a courtroom agree to do something illegal? And just because all three of them were in agreement, the judge, the prosecutor, and the defendant, does that make it legal? Okay, thank you. Thank you, counsel. That concludes the argument in this case.